UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEREMIAH D. COOPER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:21 CV 952 ACL |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM**

Plaintiff Jeremiah D. Cooper brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Cooper's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).  A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I.  Procedural History

Cooper protectively filed his application for benefits on June 28, 2017.  (Tr. 352-57.) He claimed he became unable to work on June 28, 2017, due to schizophrenia and sciatic nerve

problems. (Tr. 375.) Cooper was 31 years of age at his alleged onset of disability date. His application was denied initially. (Tr. 237-41.) Cooper's claim was denied by an ALJ on March 11, 2020. (Tr. 220-30.)

On March 17, 2021, the Appeals Council granted Cooper's request for review of the ALJ's decision and issued a new decision on June 1, 2021, finding Cooper not disabled. (Tr. 4-8.) The Appeals Council considered the revised listings at step three of the sequential evaluation process and reached the same conclusion as the ALJ—that Cooper did not meet or medically equal a listed impairment. (Tr. 5.) The Appeals Council also considered newly submitted medical evidence and found that it did not provide a basis to change the ALJ's decision. *Id.* The Appeals Council adopted all relevant portions of the ALJ's decision. (Tr. 5-7.) Thus, the decision of the Appeals Council stands as the final decision of the Commissioner. Because the Appeals Council adopted the relevant portions of the ALJ's decision, the undersigned's discussion will largely focus on the ALJ's findings and analysis.

In this action, Cooper argues that the ALJ erred "by failing to support the RFC with substantial evidence, and by failing to properly consider evidence which contradicts the assessed RFC." (Doc. 16 at 7.)

## II. The ALJ's Determination

The ALJ first found that Cooper has not engaged in substantial gainful activity since his alleged onset date. (Tr. 222.) The ALJ stated that Cooper had the following severe impairments: lumbar degenerative disc disease and depressive disorder. *Id.* The ALJ found that Cooper did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 223.)

As to Cooper's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: he cannot climb ladders, ropes, or scaffolds and can only occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl. The claimant is limited to work involving simple, routine tasks and simple work-related decisions. The claimant can perform work that involves occasional interaction with co-workers and no interaction with the public. The claimant needs to change position every 30 to 45 minutes for a few minutes at a time while remaining at the workstation and staying on task.

(Tr. 225.)

The ALJ found that Cooper had no past relevant work, but was capable of performing jobs that exist in significant numbers in the national economy, such as small parts assembler, mold machine tender, or electrical sub-assembler. (Tr. 228-29.) The ALJ therefore concluded that Cooper was not under a disability, as defined in the Social Security Act, from June 28, 2017, through the date of the decision. (Tr. 229.)

The ALJ's final decision reads as follows:

> Based on the application for supplemental security income protectively field on June 28, 2017, the claimant is not disabled under Social Security Act section 1614(a)(3)(A).

(Tr. 230.)

### III.  Discussion

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.  A claimant

has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."  42 U.S.C. § 1382c(a)(3)(B).

### 1. Applicable Law

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity.  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).  Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).  Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.  *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).

A claimant's RFC is the most he can do despite his physical or mental limitations.

*Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*.

As noted above, the ALJ found that although Cooper had no past relevant work, he was not disabled because he had the residual functional capacity ("RFC") to perform light work with a few specified limitations. When determining a claimant's RFC, under the revised Social Security regulations,[1] the agency "[w]ill not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(b)(2). Instead, the ALJ must assess the persuasiveness of all medical opinions[2] and prior administrative medical findings using a number of factors, including 1) the supportability of the opinion with objective medical evidence and explanations; 2) the consistency of the opinion with evidence from other medical and nonmedical sources; 3) the relationship of the provider to the claimant, including the length, nature and frequency of treatment; 4) the specialization of the provider; and 5) other factors, including the source's familiarity with the

---

[1]The new regulations are applicable to Cooper's claims because he filed his appeal after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

[2]A "medical opinion" is a statement from a medical source about what an individual can still do despite his impairments, and includes limitations or restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

Social Security guidelines.  *See* 20 C.F.R. § 404.1520c.  The ALJ must explain how he considered the factors of supportability and consistency in his decisions but is not statutorily required to discuss the other factors.  20 C.F.R. § 404.1520c(b)(2).

"The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion."  *Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).

If a claimant makes statements about the intensity, persistence, and limiting effects of his symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record.  SSR 16-3p, 2017 WL 5180304, at *8 (Soc. Sec. Admin. Oct. 25, 2017) (republished).   When evaluating a claimant's subjective statements about symptoms, the ALJ must consider all evidence relating thereto, including the claimant's prior work record and third-party observations as to his daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; and any functional restrictions. 20 C.F.R. § 404.1529(c)(3); *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted).   An ALJ need not discuss each factor before discounting a claimant's subjective complaints.  *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021).

Cooper argues that the ALJ made the following errors in determining his RFC: (1) the ALJ failed to perform a function-by-function assessment of Cooper's impairments; (2) the ALJ failed to support the RFC with medical evidence that assessed Cooper's ability to function in the workplace; and (3) the ALJ failed to address Cooper's symptoms of radicular pain and numbness in his right leg.

As described by the Eighth Circuit, "[o]ur role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). "We consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010) citing *Singh*, 222 F.3d at 451. "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision." *Id*. *See also Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). The Commissioner's decision will not be reversed "merely because substantial evidence exists in the record that would have supported a contrary outcome." *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

2. **RFC**

The ALJ found that Cooper could perform "light work as defined in 20 CFR 416.967(b)" except he cannot climb ladders, ropes, or scaffolds; can only occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl; is limited to work involving simple, routine tasks, and simple work-related decisions; can perform work that involves occasional interaction with co-workers and no interaction with the public; and he needs to change position every 30 to 45 minutes for a few minutes at a time while remaining at the workstation and staying on task. (Tr. 225.)

First, Cooper argues that the ALJ violated Social Security Ruling 96-8p by failing to express his RFC in a function-by-function manner before expressing it in exertional terms. He argues that the ALJ's RFC determination lacked the specificity required by the Eighth Circuit's decision in *Pfitzner v. Apfel,* 169 F.3d 566, 568-69 (8th Cir. 1999). Specifically, Cooper argues that the ALJ failed to address his standing and walking ability.

The ALJ must articulate the specifics of a claimant's RFC, rather than describe it in merely general terms. *Id.* at 568. The ALJ should specifically set forth the claimant's limitations and determine how those limitations affect the claimant's residual functional capacity. *Groeper v. Sullivan*, 932 F.2d 1234, 1238-39 (8th Cir. 1991). Failure to assess the claimant's abilities on a function-by-function basis could result in the ALJ overlooking some of an individual's limitations. *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) (citing Social Security Ruling 96-8p). For example, in *Pfitzner*, it was not clear what, if any, physical limitations the ALJ had placed on the plaintiff's work activities or how those limitations affected the plaintiff's RFC because the ALJ made only the general conclusion that plaintiff was able to perform medium work. *Pfitzner*, 169 F.3d at 568.

Here, the specifics of Cooper's RFC are clear from the ALJ's decision. The ALJ found that Cooper has the RFC to perform light work as defined in the Social Security regulations. (Tr. 225.) That is, Cooper can perform work that involves lifting no more than twenty pounds but could frequently lift or carry objects weighing up to ten pounds. 20 C.F.R. § 416.967(b). Light work may also require a good deal of walking or standing. *Id.* When light work involves sitting most of the time, a person must be able to do some pushing and pulling of arm and leg controls while seated. *Id.* The ALJ identified additional specific physical limitations regarding Cooper's ability to climb, stoop, kneel, crouch, and crawl; his need to frequently change positions; and his mental limitations of performing only simple and routine tasks, work involving only simple work-related decisions, work involving only occasional interaction with co-workers, and work involving no interaction with the public. While it may have been stylistically preferable for the ALJ to describe the lifting, carrying, standing, and walking requirements of light work as opposed to citing the relevant regulation, citing the regulation clearly conveys

Cooper's functional abilities.   Thus, the ALJ properly made explicit findings with respect to Cooper's functional abilities.

Cooper next argues, citing *Lauer v. Apfel*, 245 F.3d 700, 704-05 (8th Cir. 2001), that the ALJ failed to support the RFC with medical evidence assessing Cooper's ability to function in the workplace.   He also contends that the ALJ failed to address his symptoms of radicular pain and numbness in his right leg.   Cooper argues that the record in this case is underdeveloped, in that it does not contain opinions of a state agency consultant, a consultative examiner, or a treating physician.

### 3.   Medical Evidence and Claimant's Subjective Complaints

The medical evidence regarding Cooper's physical impairments[3] discussed by the ALJ is summarized below:

Cooper underwent an MRI of the lumbar spine November 5, 2018, which revealed a broad-based bulging disc at L5-S1, which generates mild left and moderate to severe right foraminal narrowing.   (Tr. 226, 593.)

Cooper saw David Neils, M.D., at Mercy Services Kennerly for a neurosurgery consult on January 3, 2019.   (Tr. 894-97.)   Cooper reported low back and right leg pain that had been constant for ten years.   (Tr. 894.)   Dr. Neils noted that Cooper "has not had conservative measures of any significance to this point."   *Id.*   On examination, Dr. Neils noted Cooper had intact sensation, full motor strength throughout, and ambulated without difficulty.   (Tr. 896.) Cooper reported some radicular or claudication type symptoms, but his greatest complaint was focal low back pain.   *Id.*   Dr. Neils diagnosed Cooper with lumbar spondylosis with lumbar

---

[3]Because Cooper does not challenge the ALJ's RFC findings with regard to his mental impairments, the undersigned's discussion will be limited to Cooper's physical impairments.

claudication and degenerative disc disease. *Id.* He recommended that Cooper undergo physical therapy and pain management. *Id.*

Cooper received primary care treatment from Allison R. Blacksher, PA, at Mercy Clinic Steeleville beginning in February 2019. (Tr. 226, 597-798.) On February 14, 2019, Cooper complained of right-sided low back pain with sciatica. (Tr. 602.) On examination, Cooper's gait was normal; he had adequate muscle strength; normal range of motion of the neck, back, and extremities; and mild tenderness over the right SI joint. (Tr. 604.) Ms. Blacksher prescribed Neurontin[4] and Flexeril[5] for Cooper's back pain. *Id.* Ms. Blacksher's findings on examination remained unchanged on follow-up visits on April 15, 2019 and August 27, 2019. (Tr. 620, 783.)

Cooper also received pain management treatment at Phelps Health Medical Center for his complaints of low back pain radiating down his right leg, diagnosed as lumbar sacroiliitis. (Tr. 226, 800-24.) He underwent a right-sided lumbar epidural steroid injections on April 24, 2019. (Tr. 816.) Cooper was scheduled for another injection on May 14, 2019, but he canceled the procedure because he was not having any pain. (Tr. 816.) He underwent epidural steroid injections on July 3, 2019, August 5, 2019, August 15, 2019, and October 21, 2019; a facet joint block on July 11, 2019; and a right-sided radiofrequency of the SI joint on September 10, 2019. (Tr. 806-817.) On November 6, 2019, he underwent a diskography at L5-S1 and L4-5, which was not able to recreate the typical pain. (Tr. 802.) It was noted that there was "no surgery to be done." *Id.* Cooper underwent a CT of the lumbar spine following the diskogram, which

---

[4]Neurontin is indicated for the treatment of nerve pain. *See* WebMD, http://www.webmd.com/drugs (last visited September 26, 2022).
[5]Flexeril is indicated for the treatment of muscle spasms. *See* WebMD, http://www.webmd.com/drugs (last visited September 26, 2022).

revealed a disk bulge at L5-S1 with superimposed right paracentral disk protrusion extending into the right lateral recess, with associated moderate spinal canal stenosis and right lateral recess stenosis as well as moderate neural foraminal stenosis.   (Tr. 801.)

The ALJ stated that physical examination findings fail to corroborate Cooper's subjective allegations.   (Tr. 227.)   He stated that clinicians typically documented only mild SI tenderness, and Cooper was noted to have a normal gait, with no evidence of significantly decreased spinal range of motion, muscle atrophy, spasm, weakness, or neurological defects.   *Id.*   The ALJ also characterized Cooper's treatment as conservative, noting it consisted primarily of prescribed medical and pain management therapy.   (Tr. 227.)   "[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms[.]"   SSR 16-3p, 2017 WL 5180304, at *5.   An ALJ is therefore permitted to discount a claimant's subjective statements when they are inconsistent with objective medical evidence. *Grindley*, 9 F.4th at 631.   *See also Gregg Barnhart*, 354 F.3d 710, 713-14 (8th Cir. 2003) ("The crucial question is not whether [claimant] experienced pain," but whether his supported subjective complaints "prevent him from performing any type of work.").

The ALJ next discussed Cooper's statements regarding his limitations.   Cooper testified that he started experiencing back pain about two years prior to the administrative hearing, and that the pain was not caused by any injury or event.   (Tr. 23.)   He stated that he experiences pain sporadically, "mostly in the mornings and before bed," although it occasionally lasts all day. *Id.*   Cooper stated that the pain goes down his right leg and into his toes and results in some numbness and tingling.   *Id.*   Cooper testified that he took ibuprofen for his pain, and did not take any narcotic pain medication due to past issues with addiction.   (Tr. 25, 29.)   He stated that he had not worked at any job more than approximately a month in the past ten to fifteen years.

(Tr. 23.)  Regarding his daily activities, Cooper testified that he is able to take a shower, cook, wash dishes, and perform other household chores, but he experiences significant pain if he does more strenuous tasks such as yard work.  *Id.*  Cooper stated that, when his pain starts worsening, he gets up and moves around if he is sitting; if he is standing when the pain starts, he sits down.  (Tr. 28.)  He testified that these pain flares usually start at 4:00 or 5:00 in the evening.  *Id.*  Cooper stated that he does not lay down or elevate his legs because this does not help his pain.  (Tr. 29.)

The ALJ stated that Cooper's lumbar spine impairment imposes physical exertional limitations that would prevent Cooper from sustaining medium or greater work, with limited ability to climb or bend.  (Tr. 227.)  He pointed out that Cooper testified at the hearing that the primary thing he does to relieve back pain was change position.  *Id.*  As such, the ALJ included a sit-stand option.  *Id.*  The ALJ further noted that Cooper testified that his pain is experienced primarily in the mornings and the evenings.  *Id.*

Finally, the ALJ addressed the prior administrative finding of state agency physician D. Gwartney, M.D.  Dr. Gwartney reviewed the record on September 27, 2017, and found there was insufficient evidence to provide a medical opinion regarding the severity of Cooper's impairments.[6]  (Tr. 212.)  The ALJ indicted that this opinion was "not persuasive" because it was not supported or consistent with the objective evidence as a whole, including new evidence received after the opinion was provided.  (Tr. 228.)

Cooper argues that this case is like *Lauer*, in that the record lacks medical evidence that addresses Cooper's ability to function in the workplace.  He notes that, in *Lauer*, the lack of

---

[6]The undersigned notes that Dr. Gwartney found that the evidence was insufficient, at least in large part, due to Cooper's failure to return completed functional forms despite multiple efforts of the agency to secure this information from Cooper's representative.  (Tr. 211-12.)

medical evidence assessing the claimant's abilities was due to the ALJ dismissing medical opinions, but in this case the lack of opinion evidence is due to the underdeveloped record, which contains no state agency medical consultant or other physician opinion.

In *Lauer*, the court criticized an ALJ who based the RFC on a lack of medical evidence and the opinions of consulting physicians who *themselves* lacked a complete medical record history.  *Lauer*, 245 F.3d at 705 (deciding, under old SSA regulations, the weight to give to the varying opinions between medical consultants and treating physicians).

Here, the medical consultant did not express an opinion because there was insufficient evidence in the record at that time—September 17, 2017—to provide an opinion.  The absence of evidence was due, in part, to Cooper's failure to cooperate and provide forms regarding his functional limitations.  When the ALJ rendered his decision in March 2020, however, there was sufficient evidence for the ALJ to determine Cooper's RFC.  Specifically, medical records containing examination findings and objective testing, as well as Cooper's testimony were before the ALJ when he made his determination.

Further, the Appeals Council considered additional medical evidence submitted after the ALJ's decision.  This evidence consisted of records from Phelps Health Medical Center dated April 2, 2016, to September 10, 2019.  (Tr. 4, 39-119.)  The Appeals Council found that this evidence does not show a reasonable probability that it would change the outcome of the decision.  (Tr. 4.)

For example, when Cooper presented for pain management treatment in April 2019, he reported experiencing constant severe right-sided low back pain radiating down into his right lower extremity for years, yet he had not received any treatment.  (Tr. 5, 76.)  Cooper indicated that his pain was worse when he was standing, in the morning, and before bed.  (Tr. 76.)

Cooper received epidural steroid injections during this period, but in May 2019 he canceled his scheduled epidural steroid injection because he was not experiencing pain.  (Tr. 73.)  Cooper presented to the emergency department on August 30, 2019, complaining of a laceration to the left great toe that occurred when he was riding a lawnmower.  (Tr. 45.)  He had a muscle cramp while riding the lawnmower, which caused his foot to jerk upward and hit something.  *Id.* Cooper received stiches to his toe.  (Tr. 48.)

    **4.**    **Claimant Not Disabled**

The Court finds that substantial evidence supports the ALJ's determination that Cooper retained the RFC necessary to perform the standing and walking requirements of light work.  As the ALJ discussed, examinations noted only mild SI tenderness, and Cooper was noted to have a normal gait, with no evidence of significantly decreased spinal range of motion, muscle atrophy, spasm, weakness, or neurological defects.  These clinical findings failed to demonstrate Cooper had any limitations in his ability to sit, stand, or walk, and thus support a limitation for a range of light work.  *See Steed v. Astrue,* 524 F.3d 872, 876 (8th Cir. 2008) (upholding ALJ's finding that plaintiff could perform light work based on largely mild or normal objective findings regarding her back condition, despite the fact that the medical evidence was silent regarding work-related restrictions such as the length of time she could sit, stand, and walk and the amount of weight she can carry.).  Cooper received relatively conservative treatment consisting of pain management therapy.  Although Cooper argues that the ALJ failed to consider his right leg pain and numbness, the ALJ cited medical evidence documenting "low back pain radiating down his right leg diagnosed as sacroiliitis" and accordingly limited Cooper to a range of light work.  (Tr. 226.)  Examination findings were essentially normal despite Cooper's complaints of right leg pain and numbness, as discussed above.

Lastly, Cooper argues that the ALJ failed to develop the record fully. He claims that the record contains no medical evidence of his ability to function in a work setting. It is well settled that an ALJ "has a duty to fully and fairly develop the evidentiary record." *Byes v. Astrue*, 687 F.3d 913, 915-16 (8th Cir. 2012). This duty exists independent of the claimant's burden to press his case, because the social security disability hearing is a non-adversarial hearing. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). This duty may require an ALJ to obtain additional medical evidence before rendering a decision. *See* 20 C.F.R. § 404.1519a(b), § 416.919a(b). Ultimately, however, the claimant bears the burden of proving disability and providing medical evidence regarding the existence and severity of an impairment. *Snead v. Barnhart*, 360 F.3d 834, 836 (8th Cir. 2004). So long as substantial evidence in the record provides a sufficient basis for the ALJ's decision, the ALJ is permitted to issue a decision without additional medical evidence. *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013).

In this case, there is sufficient evidence to support the ALJ's decision that Cooper is not disabled. The ALJ acknowledged the diagnostic evidence of lumbar disc protrusion with foraminal stenosis, and found that these impairments required a reduction of Cooper's RFC. As a result, the ALJ credited Cooper's testimony regarding his low back pain and right extremity weakness when limiting him to a range of light work. In addition to the medical findings on examination previously discussed, the ALJ considered Cooper's statements regarding his limitations. Despite his complaints of low back pain and right leg numbness, Cooper testified that he was capable of performing his activities of daily living and household chores, except he had difficulties with "strenuous" activities. The record indicates that Cooper was able to operate a riding lawnmower during the relevant period. He indicated that his pain was not constant, and was typically worse in the morning and before bed. Consistent with Cooper's testimony that

changing positions helped relieve his pain, the ALJ found Cooper must change position every 30 to 45 minutes.   Cooper fails to point to evidence showing greater limitations than those found by the ALJ.   Thus, the ALJ's decision was in the zone of choice.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of September, 2022.